## THORNE v. WASHINGTON TERMINAL CO. et al.

### No. 13373.

District Court for the District of Columbia.

May 11, 1944.

Harold C. Thorne, pro se.

George E. Hamilton, Jr. (of Hamilton and Hamilton), of Washington, D. C., for Washington Terminal Co.

R. Aubrey Bogley (of McKenney, Flannery & Craighill), of Washington, D. C., for Pennsylvania R. Co.

A. Rea Williams, of Washington, D. C., for Mr. Roth, trustee of the Northwestern R. Co.

Francis M. Shea, Asst. Atty. Gen., and Edward M. Curran, U.S. Atty., Daniel B. Maher, Asst. U.S. Atty., and Joseph A.

Fanelli and Arthur Magid, Attys., Department of Justice, all of Washington, D. C., for Lieutenant General Somervell.

No appearance was made for Sperry Products, Inc.

MORRIS, Justice.

This action was originally brought by the plaintiff for certain relief because of the alleged infringement of a patent by the Washington Terminal Company, a corporation. Several amendments to the complaint were allowed and additional defendants were named. By various motions all defendants were eliminated, excepting the Washington Terminal Company and the Pennsylvania Railroad Company. By Executive Order of December 27, 1943, No. 9412, the President, pursuant to the Act of Congress, approved August 29, 1916, 39 Stat. 645,[1] took possession and control of all common carriers by railroads through the Secretary of War, who designated Lieutenant General Brehon Somervell, Commanding General of the Army Service Forces, to take charge of and operate the railroads pursuant to such executive order. Subsequently, the plaintiff filed a motion for leave, by amended complaint, to make Lieutenant General Somervell, in his official capacity, a party to this suit. On January 18, 1944, the Secretary of War promulgated an order terminating government possession, operation and control of the carriers as of midnight of that date. In such order, it was provided by paragraph 3b as follows:

"In view of the short period of operation by the government under said Executive Order, all rights which the United States may have to an accounting with respect to the operation of the carriers during the period of government possession, operation and control are hereby waived and released as to each carrier whose properties were taken pursuant to said Executive Order which shall execute and deliver to the United States an instrument in the form approved by the Commanding General, Army Service Forces, or his delegate, indemnifying the United States against liability to third parties arising out of possession, operation and control during the period of government possession, operation and control and releasing all claims against the United States based upon Executive Order 9412 or any action taken pursuant to that Order."

Subsequent to the termination of such possession, control and operation, the plaintiff herein filed a motion on April 3, 1944, for leave, by an amended complaint, to make parties defendant the Chicago & Northwestern Railway Company, of which Claude A. Roth is now trustee, and Sperry Products, Incorporated. It is conceded by the plaintiff in argument that any right here relied on to make either the Chicago & Northwestern Railway Company and its trustee or Sperry Products, Incorporated, a party defendant herein depends upon the right to make Lieutenant General Brehon Somervell in his official capacity a defendant.

The contention of the plaintiff is that the Government, having taken possession, control and operation of the carriers pursuant to the Act of August 29, 1916, supra, became subject to the provisions of the Federal Control Act, approved March 21, 1918, 40 Stat. 456, the particular provisions of which relating to the liability of carriers under federal control are set forth in the margin.[2] It will be recalled that, when the

[1] "The President, in time of war, is empowered, through the Secretary of War, to take possession and assume control of any system or systems of transportation, or any part thereof, and to utilize the same, to the exclusion as far as may be necessary of all other traffic thereon, for the transfer or transportation of troops, war material and equipment, or for such other purposes connected with the emergency as may be needful or desirable." 10 U.S.C.A. § 1361.

[2] "Sec. 10. That carriers while under Federal control shall be subject to all laws and liabilities as common carriers, whether arising under State or Federal laws or at common law, except in so far as may be inconsistent with the provisions of this Act or any other Act applicable to such Federal control or with any order of the President. Actions at law or suits in equity may be brought by and against such carriers and judgments rendered as now provided by law; and in any action at law or suit in equity against the carrier, no defense shall be made thereto upon the ground that the carrier is an instrumentality or agency of the Federal Government. Nor shall any such carrier be entitled to have transferred to a Federal court any action heretofore or hereafter instituted by or against it, which action was not so transferable prior to the Federal control of such carrier; and any action which has heretofore been so transferred because

possession and control of railroad carriers were taken pursuant to the Act of August 29, 1916, in the first World War, a Director General was designated for that purpose, and, by orders duly promulgated, actions at law for matters arising out of such operation by him could be brought against him in the same courts and venue that such actions could have been brought against the carriers. It is, therefore, insisted by the plaintiff that the same procedure should be open to him here.

It is insisted, among other things, in opposition to the motions that the Congress, by an Act terminating the control then existing, approved February 28, 1920, 41 Stat. 457,[3] terminated all legislative authorization respecting the possession, control and operation of carriers theretofore enacted, excepting only, in so far as here material, the power of the President "in time of war to take possession and assume control of any system of transportation and utilize the same," as authorized by the Act of August 29, 1916, supra.

I am of the view that, even if Section 10 of the Federal Control Act, supra, should be construed, as plaintiff insists it should,[4] as constituting a legislative consent for the Government to be sued respecting the operation of railroad carriers, the possession and control of which have been taken by the Government, that section does not now stand, nor has it been implemented with any order of the President, or any one to whom he has delegated authority to act. Doubtless, if the possession, control and operation of the carriers had extended over a longer period of time in this present emergency, as it did in the last World War, Congress would have made provision, as it did then, to safeguard the rights of third persons injured by government operation. Obviously, however, with the short period

of such Federal control or of any Act of Congress or official order or proclamation relating thereto shall upon motion of either party be retransferred to the court in which it was originally instituted. But no process, mesne or final, shall be levied against any property under such Federal control."

[3] "Sec. 200. (a) Federal control shall terminate at 12.01 a. m., March 1, 1920; and the President shall then relinquish possession and control of all railroads and systems of transportation then under Federal control and cease the use and operation thereof.

"(b) Thereafter the President shall not have or exercise any of the powers conferred upon him by the Federal Control Act relating—

"(1) To the use or operation of railroads or systems of transportation;

"(2) To the control or supervision of the carriers owning or operating them, or of the business or affairs of such carriers;

"(3) To their rates, fares, charges, classifications, regulations, or practices;

"(4) To the purchase, construction, or other acquisition of boats, barges, tugs, and other transportation facilities on the inland, canal, or coastwise waterways; or (except in pursuance of contracts or agreements entered into before the termination of Federal control) of terminals, motive power, cars, or equipment, on or in connection with any railroad or system of transportation;

"(5) To the utilization or operation of canals;

"(6) To the purchase of securities of carriers, except in pursuance of contracts or agreements entered into before the termination of Federal control, or as a necessary or proper incident to the adjustment, settlement, liquidation and winding up of matters arising out of Federal control; or

"(7) To the use for any of the purposes above stated (except in pursuance of contracts or agreements entered into before the termination of Federal control, and except as a necessary or proper incident to the winding up or settling of matters arising out of Federal control, and except as provided in section 202) of the revolving fund created by such Act, or of any of the additions thereto made under such Act, or by the Act entitled 'An Act to supply a deficiency in the appropriation for carrying out the Act entitled "An Act to provide for the operation of transportation systems while under Federal control, for the just compensation of their owners, and for other purposes," approved March 21, 1918,' approved June 30, 1919.

"(c) Nothing in this Act shall be construed as affecting or limiting the power of the President in time of war (under section 1 of the Act entitled 'An Act making appropriations for the support of the Army for the fiscal year ending June 30, 1917, and for other purposes,' approved August 29, 1916) to take possession and assume control of any system of transportation and utilize the same."

[4] Westbrook et al. v. Director General of Railroads, D.C.N.D.La., 1920, 263 F. 211; Schroeder v. Davis, Agent, 8 Cir., 1929, 32 F.2d 454.

here involved, and the commitment by the carriers to assume all liability respecting government operation during such period, the rights of third parties are not jeopardized, and there has been no action by the legislative machinery and implementing executive orders which can be construed as a consent that the United States be sued by third persons respecting such operation.

There is no contention here made by any of the carriers who are parties to this suit that any liability which they may have to the plaintiff respecting the matters here involved is affected by the Government's possession, control and operation, and it is clear from the terms of the arrangement terminating control that they could not successfully do so.

I cannot agree with the contentions made by the plaintiff in connection with the motions here under consideration, and such motions will be denied.